UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 09-23815-CIV-MORENO

ALAN HILL,

    Plaintiff,

vs.

CELEBRITY CRUISES, INC.,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Plaintiff, Alan Hill, filed suit against Defendant, Celebrity Cruises, Inc., alleging several counts of negligence against Defendant arising from the medical care Plaintiff received from an on-board physician on one of Defendant's cruise ships. Defendant moves to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants in part and denies in part Defendant's motion to dismiss.

## BACKGROUND

Plaintiff, Alan Hill, filed suit against Defendant, Celebrity Cruises, Inc., alleging *inter alia*, the ship's direct negligence for the medical treatment provided to Plaintiff by the on-board physician, Dr. Dahl. The incidents giving rise to the lawsuit occurred between January 11, 2009 and January 16, 2009. On January 11, 2009, Plaintiff, with a fever, weakness, and incontinence, visited the medical center onboard the *Celebrity Summit*. Plaintiff alleges that even though he should have been transported to land, Dr. Dahl recommended that Plaintiff remain onboard. Again, on January 12th, Plaintiff requested to be transported to the nearest medical hospital on land, but his request was

denied. On January 13th, Plaintiff was not eating or drinking, and was being fed intravenously. On January 14th, Dr. Dahl reported that his condition was improving but did not record any objective data and continued to recommend that Plaintiff remain onboard the ship. On January 15th, Plaintiff complained of abdominal distention and constipation, and although Plaintiff's condition had worsened, the doctor still recommended that Plaintiff remain onboard the ship. Finally, on January 16th, as Plaintiff's condition continued to decline, Defendant arranged for Plaintiff to be transported to a hospital that was forty-five minutes of travel time away. As a result of Defendant's negligence, Plaintiff suffered colonic perforation, infection, sepsis, and underwent surgery in Puerto Rico and further medical care in Boston.

The incidents described above led Plaintiff to file a seven-count complaint alleging negligence against Defendant based on apparent agency (Count I); negligence of the cruise line for failure to provide a sufficient number of physicians and reasonable medical facilities (Count II); negligence for the failure of the ship's command to divert the course of the ship (Count III); negligence in hiring, retaining, monitoring, and training the onboard medical staff (Count IV); negligent misrepresentation (Count V); negligence against Defendant under theories of a joint venture (Count VI); and breach of a third party beneficiary contract (Count VIII).[1]

## ANALYSIS

### Standard of Review

"To survive a motion to dismiss, plaintiffs must do more than merely state legal

---

[1]Plaintiff's complaint contains seven counts, but Plaintiff misnumbered the counts and failed to include Count VII in his allegations.

conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

### Applicable Law

The applicable law for this case is "the general maritime law, the rules of which are developed by the federal courts" because this case involves an alleged tort of personal injury that arose while onboard a ship sailing in navigable waters. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959). "Furthermore, courts have found admiralty law applies in personal injury and contract disputes between passengers injured on cruise ships and the cruise ship companies." *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1370 (S.D. Fla. 2005). Pursuant to 28 U.S.C. § 1333 federal courts have admiralty jurisdiction whereby substantive maritime law applies. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986). "Federal maritime law

is an amalgamation of federal legislation, federal common law, and state maritime law." *Carnival Corp. v. Carlisle*, 953 So. 2d 461 (Fla. 2007); *see also E. River*, 476 U.S. at 864-65. However, "if neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." *Coastal Fuels Mktg. Inc. v. Florida Express Shipping Co.*, 207 F.3d 1247, 1251 (11th Cir. 2000). Accordingly, the Court has admiralty jurisdiction to adjudicate this case and maritime law governs.

Defendant moves to dismiss all counts of Plaintiff's complaint for failure to state a claim upon which relief can be granted. The Court will address each count in turn below.

## Count I:

In Count I, Plaintiff alleges Defendant's negligence based on apparent agency claiming that Plaintiff was treated by the ship's doctor improperly and unreasonably under the circumstances and below the standard of care. (Compl. ¶ 39.) In support of dismissal, Defendant seeks for the Court to apply the majority rule in *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir. 1988), which held that if an on-board physician is negligent when treating a passenger, that negligence is not imputed to the ship. Defendant argues that based on *Barbetta*, it cannot be held liable for the actions of the ship's physician. Secondly, Defendant contends that it expressly represented to all passengers that all of the ship's physicians are independent contractors, not employees or agents of Defendant, and therefore, it does not share liability based on physician's alleged negligence.

The majority rule is clear that under a theory of *respondeat superior* the negligence of the ship's physician is not imputed onto the ship. *See Barbetta*, 848 F.2d 1369; *see also Carnival Corp.*,

953 So. 2d 461 (applying the majority rule in *Barbetta*). The question presented here, is whether the cruise line should be held vicariously liable for the negligent acts of the on-board physician on a theory of apparent agency. "Apparent agency is established where: (1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal; (2) the third party's belief was reasonable; and (3) the third party reasonably acted on such belief to his or her detriment." *Suter v. Carnival Corp.*, No. 07-20298-CIV, 2007 WL 4662144, at *5 (S.D. Fla. May 14, 2007). Vicarious liability claims based on the physician's negligence on a theory of apparent agency and the majority rule established in *Barbetta* can coexist. *See, e.g., Doonan*, 404 F. Supp. 2d at 1372; *Warren v. Ajax Navigation Corp.*, 1995 AMC 2609, 2611-12 (S.D. Fla. 1995). The maritime principles of harmony and uniformity are not offended by permitting vicarious liability on the theory of apparent agency "because cruise lines are well aware that if they affirmatively hold shipboard doctors out to passengers as their agents, they effectively lose their immunity from liability from any negligent acts of their shipboard doctors." *Suter*, 2007 WL 4662144, at * 6. Thus, assuming Plaintiff sufficiently pleads his claim, permitting a claim of vicarious liability based on the theory of apparent agency is not inconsistent with the majority rule enunciated in *Barbetta*.

Because the first two factors required to establish apparent agency overlap, the Court will address them together. The first two issues, whether Defendant made some sort of manifestation that caused Plaintiff to believe that Dr. Dahl was Defendant's agent and that this belief was reasonable, are a question of fact. *See Doonan*, 404 F. Supp. 2d at 1371 (citing *Warren*, 1995 AMC at 2611). A simple representation that Defendant provides a physician on board is not sufficient on its own to establish apparent agency. *See Warren*, 1995 AMC at 2612-13. Instead, the plaintiff must point

to additional affirmative acts as evidence that the ship "held out" the physician as its agent. *See Suter*, 2007 WL 4662144, at *6 (citing *Doonan*, 404 F. Supp. 2d at 1372).

Defendant attempts to defeat Plaintiff's apparent agency claim by arguing that in the passenger ticket it explicitly notified Plaintiff that the doctors on the ship are independent contractors and not employees of the ship. The facts in this case resemble those in *Suter* and *Doonan*, as both cases dealt with personal injury suits arising from the on-board physician's negligence where the plaintiffs argued that the cruise line was vicariously liable on the basis of apparent agency. In *Suter*, the defendant also argued that the passenger ticket informed the plaintiff that the on-board physician was an independent contractor, and thus, there could not be liability on the basis of apparent agency. The court in *Suter* rejected this argument, however, because there was no evidence that the plaintiff had read and understood the terms and conditions included in the ticket, making the cruise line's argument premature. The court in *Suter* was further persuaded because this argument was made, not at the summary judgment phase, but instead on a motion to dismiss, where the court must accept all facts alleged by plaintiff as true. *See,* 2007 WL 4662144, at *6. Likewise, there is no evidence that Plaintiff in this case read and understood the terms and conditions on the passenger ticket, and so, Defendant's argument fails.

Moreover, "[i]t is well settled that the owner of a passenger vessel may not contractually limit its liability for its own negligence." *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1355 (S.D. Fla. 2009) (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335 (11th Cir. 1984)). If a plaintiff alleges direct negligence against the ship, the Court need not consider an exculpatory clause at the motion to dismiss stage. *See Fojtasek*, 613 F. Supp. at 1355. Therefore, Defendant's arguments seeking to disclaim liability because it represented to passengers that the

physicians on board are independent contractors fail.

In the instant case, Plaintiff makes similar arguments as the plaintiffs in *Suter* and *Doonan* to survive a dismissal of his apparent agency claim. Here, Plaintiff alleges that Dr. Dahl was held out as an officer of the ship; he was allowed to eat with the ship's crew; the ship's literature onboard indicated that he was a crew member, officer, and employee of the cruise line; he was placed under the command of the ship's superior officers, including the master of the ship; he was provided a uniform by the cruise line with epaulets and stripes; and the doctor's services were charged to the passenger's onboard charge account. (Compl. ¶ 34.) Plaintiff maintains that based on these representations by Defendant, Plaintiff believed Dr. Dahl was acting as an agent for Defendant. In short, Plaintiff argues that Defendant held out Dr. Dahl as an employee and as an officer of the ship, not merely a doctor on board the ship. The Court finds that Plaintiff provides sufficient allegations to demonstrate that Defendant "held out" Dr. Dahl as its agent and that Plaintiff's belief in these manifestations are reasonable. *See Suter*, 2007 WL 4662144, at *7 (citing *Doonan*, 404 F. Supp. 2d at 1372). Therefore, the first two factors necessary to establish apparent agency are satisfied.

Next, Plaintiff must also demonstrate that he reasonably acted on the belief that Dr. Dahl was Defendant's agent and relied on this belief to his detriment. A third party exhibits reliance "by showing a change of position, which may include any payment of money, expenditure of labor, suffering a loss or subjection to legal liability." *Suter*, 2007 WL 4662144, at *7 (citation and internal quotations omitted). To demonstrate reliance, Plaintiff explains that he paid money to Dr. Dahl in reliance upon Defendant's manifestations of agency and suffered a loss as a result. Taking Plaintiff's allegations as true, the Court finds that Plaintiff detrimentally relied on Defendant's manifestations based on his payment to Dr. Dahl and the injuries he suffered from Dr. Dahl's treatment such that

Count I survives dismissal. Accordingly, because Plaintiff has sufficiently pled all factors to establish an apparent agency claim, the Court DENIES Defendant's motion to dismiss as to Count I.

**Count II**:

In Count II, Plaintiff alleges Defendant's direct negligence for failure to provide a sufficient number of physicians and reasonable medical facilities on its ship. The majority rule in *Barbetta* explains that "[w]hen a carrier undertakes to employ a doctor aboard ship for its passengers' convenience, the carrier has a duty to employ a doctor who is competent and duly qualified." 848 F.2d at 1369. Here, Defendant employed a doctor to provide medical services for its passengers, and therefore, the duty is not one of reasonable care. Rather, Defendant's duty is to provide a competent and duly qualified doctor. *Barbetta* clearly limits the ship's responsibility in the event the doctor it employed is negligent and specifies that the doctor's negligence is not imputed to the ship. *See id.*

Plaintiff argues that although Defendant may not have had a duty to provide medical services on board, because Defendant voluntarily undertook a duty to provide medical services to passengers it must then provide care at a reasonable standard. Maritime law does apply the principle that "a person who voluntarily assumes a duty owed by another and then breaches that duty becomes liable to one who is injured as a result of the breach." *See Miss Janel, Inc. v. Elevating Boats, Inc.*, 725 F. Supp. 1553, 1567 (S.D. Ala. 1989) (explaining that the "'good samaritan' rule is applicable in maritime cases, and is set forth in section 324A of the Second Restatement of Torts") (citing *Indian Towing Co. v. U.S.*, 350 U.S. 61, 76 (1955)). Yet, this principle does not apply when the ship provides medical services for its passengers. *See Carnival Corp.*, 953 So. 2d at 468 (Fla. 2007)

(holding that a ship owner's *sole* duty is to provide a duly qualified and competent doctor) (emphasis added). As stated above, the majority rule established in *Barbetta* explains that if a ship owner elects to provide medical assistance, the only duty of the ship is to provide a qualified and competent physician. Moreover, *Barbetta* addressed the difference between "the employer's right to control its employees' general actions [as compared] with its ability to control those specific actions which could subject the employer to liability" and concluded that with a ship's physician, the ship lacks both "(1) the expertise to meaningfully evaluate and, therefore, control a doctor's treatment of his patients and (2) the power, even if it had the knowledge, to intrude into the physician-patient relationship." 848 F.2d at 1371. Providing a doctor on board the ship does not create a duty as to the standard of medical care because the ship cannot dictate the details of the medical services performed by the doctor due to the ship's lack of control and expertise.

There are two justifications for the *Barbetta* principle. First, "the nature of the relationship between the passenger and the physician, and the carrier's lack of control over that relationship." *Barbetta*, 848 F.2d at 1369. And second, is that a ship "does not possess the expertise requisite to supervise a physician or surgeon carried on board a ship as a convenience to passengers. A ship is not a floating hospital; a ship's physician is an independent medical expert engaged on the basis of his professional qualifications and carried on board a ship for the convenience of passengers, who are free to contract with him for any medical services they may require." *Id.* at 1369-70.

Therefore, because there is no duty for Defendant to provide a certain number of physicians or to provide reasonable medical facilities, the Court GRANTS Defendant's motion to dismiss as to Count II.

**Count III:**

In Count III, Plaintiff claims direct negligence by Defendant for failure to divert the course of the ship and for failure to transport Plaintiff to the closest medical facility. Plaintiff's claim is founded on the premise that Defendant is obligated to provide Plaintiff a reasonable standard of care as held in *Kermarec v. Compagnie Generales Transatlantique*, 358 U.S. 625 (1959). Indeed, *Kermarec* does establish that shipowners owe a duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew. *Id.* at 630. Yet, in the context of Plaintiff's claim, a shipowner has no duty to provide medical services and if a shipowner does provide medical services the standard of care owed is to provide a qualified and competent physician. *See Barbetta*, 848 F.2d at 1369; *Mascolo v. Costa Crociere, S.p.A.*, 726 F. Supp. 1285, 1286 (S.D. Fla. 1989); *Walsh v. NCL (Bahamas) Ltd.*, 466 F. Supp. 2d 1271, 1273 (S.D. Fla. 2006).

Plaintiff complains that Defendant has a duty to provide transportation to the nearest port, has a duty to evacuate the passenger by means of helicopter, and has a duty to provide a means of transporting passengers to the nearest hospital when the passenger is on land. (Compl. ¶ 46.) If the Court would impose these duties upon Defendant, it will convert Defendant from a cruise ship into a floating ambulance – which is contrary to the majority rule in *Barbetta*. *See Barbetta*, 848 F.2d at 1374 ("A shipping company is not in the business of providing medical services to passengers." quoting *Amdur v. Zim Israel Navigation Co.*, 310 F. Supp. 1033, 1042 (S.D.N.Y. 1969)); *see also Gliniecki v. Carnival Corp.*, 632 F. Supp. 2d 1205, 1207 (S.D. Fla. 2009). Defendant has no duty to provide medical transportation services or to divert the course of the ship for medical treatment, and therefore, Plaintiff fails to state a claim upon which relief can be granted. Accordingly, the Court GRANTS Defendant's motion to dismiss Count III of the complaint.

### Count IV:

Plaintiff alleges the direct negligence of the cruise line through its negligent hiring, retention, monitoring, and training of the on-board medical staff. Specifically, Plaintiff claims that the ship's medical staff, including its only physician on duty, was by the physician's own admission, overworked and overwhelmed. Plaintiff alleges that "[h]e was not equipped either through his education, training,[or] skills . . . ." (Compl. ¶ 52.) These allegations refute Defendant's argument that Plaintiff never alleged the doctor was incompetent or unqualified.

There is no obligation for Defendant to monitor or train the on-board physician or medical staff it provides for its passengers. As explained above, "a shipping company . . . does not possess the expertise necessary to supervise a physician or surgeon carried on board a ship as a convenience to passengers" because of the lack of control and knowledge by the cruise line to control the physician's treatment of his patients. *See Amdur,* 310 F. Supp. at 1042 (*cited in Hesterly v. Royal Caribbean Cruises, Ltd.,* 515 F. Supp. 2d 1278, 1285 (S.D. Fla. 2007). Therefore, because a cruise line does not owe its passengers a duty to supervise, monitor, or train the medical staff, the Court dismisses Count IV insofar as Plaintiff alleges a cause of action based on a duty to supervise and train the on-board medical staff.

Nevertheless, viewing the complaint in the light most favorable to Plaintiff, the Court finds that he adequately states a valid claim in Count IV as to Defendant's negligent hiring and retention of medical staff. To be clear, Defendant does not owe a duty to provide medical care or treatment to its passengers, but the Court finds that because Plaintiff attacks the competency and qualifications of the medical staff provided by Defendant, his claim survives. Plaintiff's allegations under Count IV survive dismissal not based on a reasonable standard of care, but rather on whether Defendant

provided a qualified and competent physician. *See Carnival Corp.*, 953 So. 2d at 467-68 (explaining that *Barbetta* held "that a ship owner's sole duty is to provide a duly qualified and competent surgeon and that the ship owner is not vicariously liable to a passenger for the negligence of the shipboard surgeon"); *see also, Barbetta*, 848 F.2d at 1371-72 ("To the extent that a carrier negligently hires an incompetent doctor . . . . the carrier has not discharged its duty to its sick and injured passengers."). Thus, the Court DENIES Defendant's motion to dismiss as to Count IV to the extent that Plaintiff alleges the physician and medical staff provided by Defendant were not competent or qualified.

**Count V:**

In Count V, Plaintiff alleges that Defendant is liable for negligent misrepresentation. The Court will apply Florida law to analyze this claim because there is no statute or judicial principle in maritime law that can otherwise guide the Court and applying Florida law does not interrupt the uniformity of admiralty law. *See Baggett v. Richardson*, 473 F.2d 863, 864 (5th Cir. 1973)[2] (applying state law because "even though admiralty suits are governed by federal substantive and procedural law, courts applying maritime law may adopt state law by express or implied reference or by virtue of the interstitial nature of federal law") (citations and quotations omitted).

To succeed in a negligent misrepresent claim, a plaintiff must establish: "(1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its

---

[2] All Fifth Circuit decisions handed down prior to the close of business on September 30, 1981, are binding precedent upon the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)(*en banc*).

falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation." *Fojtasek*, 613 F. Supp. 2d at 1355 (citing *Wallerstein v. Hosp. Corp. of Am.*, 573 So. 2d 9, 10 (Fla. 4th DCA 1990).

Plaintiff claims Defendant represented that it would have "two fully qualified doctors and three nurses." Plaintiff points to Defendant's website which states that Defendant "can accommodate all our guests' medical needs." (Compl. ¶ 57.) To support his claim of negligent misrepresentation, Plaintiff argues that there was only one doctor and no nurses, and he was injured as a result of his reliance on Defendant's representations. To establish reliance, Plaintiff explains that he read these statements on Defendant's website and relied on the representations "in choosing the subject cruise line." (Compl. ¶ 60.)

Yet the misrepresented facts must be material to satisfy this claim, which means that the facts are something of essential consequence such that "but for the misrepresentation, the aggrieved party would not have entered into the contract." *Ribak v. Centex Real Estate Corp.*, 702 So. 2d 1316, 1317 (Fla. 4th DCA 1997). Facts are material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question . . . ." Restatement (Second) of Torts § 538(2) (cited in *Balaschak v. Royal Caribbean Cruises, LTD.*, No. 09-21196, 2010 U.S. Dist. LEXIS 9566, at *4 (S.D. Fla. Feb. 4, 2010)). Here, Plaintiff fails to allege that he would have made a different decision in his selection of the cruise line had Defendant not made these representations. Plaintiff's bare allegation of his reliance on the misrepresentations lacks specificity and is an example of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." *Iqbal*, 129 S. Ct at 1949-50. In analyzing

motions to dismiss, it is the duty of the Court to separate legal conclusions, that are not entitled to the assumption of truth, from factual allegations that are. *Id.* at 1950. Therefore, the Court finds that Plaintiff has not sufficiently pled his claim of negligent misrepresentation and GRANTS Defendant's motion to dismiss without prejudice with leave to amend for failure to state a claim upon which relief can be granted as to Count V.

**Count VI:**

In Count VI, Plaintiff claims Defendant was negligent under a theory that the doctor and Defendant were engaged in a joint venture. A joint venture consists of "a special combination of two or more persons, who, in some specific venture, seek a profit jointly without the existence between them of any actual partnership, corporation, or other business entity." *Browning, Jr. v. Peyton, Jr.*, 918 F.2d 1516, 1520 (11th Cir. 1990) (citation and internal quotations omitted). "In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained." *Id.* (citation omitted). All elements are necessary to find a joint venture relationship because "Florida courts have interpreted these requirements to preclude a finding that a partnership or joint venture exists where any factor is missing." *Williams v. Obstfeld, Grin* 314 F.3d 1270, 1276 (11th Cir. 2002).

Here Plaintiff alleges that Defendant and the doctor were engaged in a joint venture because the two parties had an agreement to share the revenues resulting from the sale of medical supplies and services. Plaintiff also argues that Defendant paid the physician an on-board base fee for his

-14-

services. (Compl. ¶ 66.) Yet Plaintiff fails to allege that Defendant had joint control or right of control over the doctor. Moreover, Plaintiff fails to allege that Defendant and the doctor shared in the losses of this "venture." Thus, the Court GRANTS Defendant's motion to dismiss Count VI without prejudice for failure to plead a claim upon which relief can be granted.

## Count VIII[3]:

In Count VIII, Plaintiff alleges that he was a third party beneficiary of the medical services contract entered into between Defendant and Dr. Dahl. To establish a cause of action for breach of a third party beneficiary contract, one must prove "(1) the existence of the contract; (2) clear or manifest intent of the parties that the contract primarily and directly benefits the third party; (3) breach of a contract by a contracting party; and (4) damages to the third-party resulting from the breach." *Steadfast Ins. Co. v. Corporate Prot. Sec. Group, Inc.*, 554 F. Supp. 2d 1335, 1338 (S.D. Fla. 2008) (citation omitted). "Unless a contract is entered into for the direct and substantial benefit of a third party, it binds and benefits only the parties themselves." *City of Tampa v. Thornton-Tomasetti, P.C.*, 646 So. 2d 279, 282 (2nd DCA 1994) (citing *Horizon Images, Inc. v. Delta Color Graphics, Inc.*, 639 So. 2d 186 (4th DCA 1994)).

In his Complaint, Plaintiff explains that he is not in possession of the contract between Dr. Dahl and Defendant which outlines the terms of the medical services Dr. Dahl will provide on board the ship. In its Reply brief, Defendant attaches the contract at issue. Yet, "[a] court's review on a motion to dismiss is limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*,

---

[3]The Complaint contains seven counts, but the last count is incorrectly numbered as Count VIII, instead of as Count VII. To be consistent, the Court will continue to refer to it as Count VIII.

-15-

555 F.3d 949, 959 (11th Cir. 2009). If the court considers matters outside of the pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted, the motion to dismiss shall be converted into one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n.2 (11th Cir. 2006) ("Normally once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment.") (citation and internal quotation marks omitted). And, it is within the court's discretion to determine whether to consider matters outside the pleadings. *See Jones v. Auto. Ins. Co.*, 917 F.2d 1528, 1531-32 (11th Cir. 1990).

After careful review of the record, the Court finds that it is premature to convert Defendant's motion to dismiss Count VIII into one for summary judgment, and therefore, will not consider the contract attached to Defendant's Reply brief. The issue of intent is factually intensive and to adjudicate it on an incomplete record, without an opportunity to conduct a review of the contract and discovery on the issue, would be inefficient and unfair. Furthermore, the contract was not attached to the motion to dismiss, but instead, Defendant waited until the reply brief to attach the contract. Though Defendant stated that it had no objection with Plaintiff filing a sur-reply to respond to the attached contract, in light of the timing of when the contract was presented to the Court and to Plaintiff, the Court is further convinced that Plaintiff is poorly equipped to present sufficient evidence needed for summary judgment review. As a result, the Court declines to consider the contract attached to Defendant's Reply brief, and therefore, Defendant's motion to dismiss or alternatively its motion for summary judgment, as to Count VIII is DENIED.

# CONCLUSION

For the reasons stated, it is

**ORDERED AND ADJUDGED** that the Defendant's motion to dismiss is granted in part and denied in part as follows:

(1) Defendant's motion to dismiss Count I is DENIED.

(2) Defendant's motion to dismiss Count II is GRANTED with PREJUDICE because Defendant does not have a duty to provide a sufficient number of physicians and reasonable medical facilities.

(3) Defendant's motion to dismiss Count III is GRANTED with PREJUDICE because there is no duty owed by Defendant to provide medical transportation services.

(4) Defendant's motion to dismiss Count IV is DENIED.

(5) Defendant's motion to dismiss Count V is GRANTED WITHOUT PREJUDICE with leave to amend for failure to sufficiently plead a cause of action for negligent misrepresentation.

(6) Defendant's motion to dismiss Count VI is GRANTED WITHOUT PREJUDICE with leave to amend for failure to sufficiently plead a cause of action for liability under a theory of joint venture.

(7) Defendant's motion to dismiss Count VIII is DENIED. It is also,

**ADJUDGED** that Plaintiff may file an amended complaint within ten calendar days of the date of this Order as to Counts V and VI.

DONE AND ORDERED in Chambers at Miami, Florida, this 13th day of September, 2010.

FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record