09-23815.rr2

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 09-23815-CIV-MORENO/BROWN

ALAN HILL,

    Plaintiff,

vs.

CELEBRITY CRUISES, INC.,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on Celebrity's Motion for Summary Final Judgment (D.E.119). The Court has reviewed the Motion, the Response, and the Reply, the Notices of Supplemental Authority, and all pertinent portions of the file and is otherwise fully advised.

## FACTS[1]

On or about December 13, 2008, Plaintiff Alan Hill's wife, Carol Hill, booked a Southern Caribbean cruise aboard the Defendant Celebrity Cruises, Inc.'s ("Celebrity") *Summit* (hereinafter "the ship") for Plaintiff and herself. At the time of the incident, Plaintiff was 80 years old and Mrs. Hill was 21 or 22 years younger. A. Hill Dep. p. 111. Plaintiff delegated to his wife the responsibility to set up the cruise, and prior to the cruise, Plaintiff assigned his wife as a proxy with power of attorney.

---

[1] Those facts which contain no record references were admitted by the respective parties or are deemed admitted due to Plaintiff's failure to controvert same.

1

Upon purchasing their tickets on December 13, 2008, Mrs. Hill was provided with an "Offer Confirmation Invoice - Guest Copy" ("Confirmation Invoice"). The first line of the Confirmation Invoice under the bolded and underlined section called "Remarks" provides that "booking is governed by the terms and conditions of the Cuise/Cruisetour Ticket Contract" ("Ticket Contract"). A copy of the Ticket Contract is attached as Exhibit 'C'". The Ticket Contract provides in pertinent part:

**IMPORTANT NOTICE TO GUESTS**

**YOUR CRUISE/CRUISETOUR TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF PASSENGERS. IT IS IMPORTANT THAT YOU CAREFULLY READ ALL TERMS OF THIS CONTRACT, PAYING PARTICULAR ATTENTION TO SECTION 3 AND SECTIONS 9 THROUGH 11, WHICH LIMIT OUR LIABILITY AND YOUR RIGHT TO SUE, AND RETAIN IT FOR FUTURE REFERENCE.**

\* \* \*

**1. INTRODUCTION:**
This Cruise/CruiseTour Ticket Contract (the "Ticket Contract") describes the terms and conditions that will apply to the relationship between the passenger [as defined] and the Carrier [as defined] with respect to the Cruise or CruiseTour covered by this Agreement. Except as otherwise expressly provided herein, this Agreement supersedes any other written or oral representations or agreements relating to the subject matter of this Agreement or the Cruise or the CruiseTour.

Purchase or use of this Ticket Contract, whether or not signed by the Passenger, shall constitute the agreement by Passenger, on behalf of himself and all other persons traveling under this Ticket Contract (including any accompanying minors or other persons for whom the Ticket Contract was purchased), to be bound by the terms and conditions of this Ticket Contract. This Ticket Contract cannot be modified except in a writing signed by a corporate officer of Operator. In addition, Guest acknowledges the availability of and Guest agrees to abide by the terms and conditions . . . . In the event of any conflict between such other brochure or website materials and this Ticket Contract, the terms of this Ticket Contract shall prevail.

\* \* \*

**4. MEDICAL CARE AND OTHER PERSONAL SERVICES:**
a. Availability of Medical Care. Due to the nature of travel by sea and the ports visited, the availability of medical care onboard the Vessel and in ports of call may be limited or delayed and medical evacuation may not be possible from the Vessel while at sea or from every location to which the Vessel sails.
b. Relationship with Service Providers. To the extent Passengers retain the services of medical personnel or independent contractors on or off the Vessel, Passengers do so at their sole risk. Any medical personnel attending to a Passenger on or off the Vessel, if arranged by Carrier, are provided solely for the convenience of the Passenger, work directly for the Passenger, and shall not be deemed to be acting under the control or supervision of the Carrier, as Carrier is not a medical provider. Likewise, any onboard concessions ... are either operated by or are independent contractors on board the Vessel, on Transport or elsewhere and are provided solely for the convenience of the Passenger.

2

> Even though the Carrier shall be entitled to charge a fee and earn a profit for arranging such services, all such persons or entitles shall be deemed independent contractors and not acting as agents or representatives of Carrier. Carrier assumes no liability whatsoever for any treatment, failure to treat, diagnosis, misdiagnosis, actual or alleged malpractice, advice, examination or other services provided by such persons or entities. Guest acknowledges that ... providers of merchandise and personal services are employees of independent contractors and that Carrier is not responsible for their actions.
>
> \* \* \*
>
> **11. LIMITATIONS OF LIABILITY:**
> a. CARRIER SHALL NOT BE LIABLE FOR INJURY, DEATH, ILLNESS, DAMAGE, DELAY OR OTHER LOSS TO PERSON OR PROPERTY, OR ANY OTHER CLAIM BY ANY PASSENGER CAUSED BY ACT OF GOD, WAR, TERRORISM, CIVIL COMMOTION, LABOR TROUBLE, GOVERNMENT INTERFERENCE, PERILS OF THE SEA, FIRE, THEFTS OR ANY OTHER CAUSE BEYOND CARRIER'S REASONABLE CONTROL, OR ANY ACT NOT SHOWN TO BE CAUSED BY CARRIER'S NEGLIGENCE.
> b. PASSENGER AGREES TO SOLELY ASSUME THE RISK OF INJURY, DEATH, ILLNESS OR OTHER LOSS, AND CARRIER IS NOT RESPONSIBLE FOR ... THE NEGLIGENCE OR WRONGDOING OF ANY INDEPENDENT CONTRACTORS, ...

D.E. 119-3.

Mrs. Hill testified that she printed the Confirmation Invoice and "glanced" at the tickets, but did not read the Ticket Contract, stating: "If [the Ticket Contract] came along with a letter that gave us our information about name, address, what room we had, and then beyond that information, if it was a contract per se, if it said contract, I wouldn't have bothered to read it, because it's usually just gobbly gook I'm not trained to understand." C. Hill Dep. p. 284. Mr. Hill relied on his wife to handle the booking of the cruise and did not look at the tickets.

On January 10, 2009, Plaintiff and Mrs. Hill boarded the Celebrity Summit for a 7-day Southern Caribbean cruise leaving out of San Juan, Puerto Rico. Upon boarding, Mrs. Hill signed an "Xpress Pass," which stated: "I, Carol Hill certify that I am over 18 years of age, and that during the online check-in process, I read and accepted all of the conditions on the cruise ticket contract with authority and on behalf of the following guests: Guest from Primary Reservation: Carol Hill, Allan Hill [sic]." D.E. 119-4.

Plaintiff fell ill during the course of the cruise and went to the ship's infirmary, at which time

Mrs. Hill signed a form entitled "Medical Facility - Consultation Request - Guest" on Plaintiff's behalf. On the top of the form, the following statement appears in bold font:

> **Physicians are independent contractors. All medical services are subject to charge based upon U.S. Government Medicare Physician Fee Schedule rates.**

D.D. 119-6.

Plaintiff was treated onboard by the ship's only physician, Dr. Eilif Dahl, a physician from Norway. At the end of the cruise, Plaintiff was disembarked in San Juan and transported to a local hospital for eventual colorectal surgery and other treatment. Plaintiff contends that Celebrity, through Dr. Dahl, failed to provide him with the proper medical care and treatment while onboard the ship.

While onboard, Mrs. Hill saw Dr. Dahl in his Celebrity uniform, which included a Celebrity name tag with the Celebrity logo on it, and saw his picture hanging in the Guest Services area. Mrs. Hill never saw Dr. Dahl eating with the crew, but did see him eating with the passengers. Mrs. Hill did not know where Dr. Dahl's cabin was other than it was around the corner from the infirmary. Mrs. Hill was unaware of Celebrity's representations to immigration officials regarding Dr. Dahl. She never heard any member of Celebrity's crew refer to Dr. Dahl as an officer of the ship, nor did she ever see him introduced as an officer.

Mrs. Hill testified that the fact that Dr. Dahl was in a uniform with epaulets and stripes conveyed to her "a message of trust, impression or authority, of being a senior officer on the cruise ship." C. Hill Dep. pp. 256-57. Mrs. Hill further testified that she would not have booked the cruise had she known the ship had only one physician. Id. at p. 189.[2]

---

[2] Plaintiff does not recall ever seeing Dr. Dahl, nor did he have any knowledge of his relationship to Celebrity. Plaintiff testified that he never saw any of the literature attached to the Amended Complaint before boarding the cruise ship, that he made no judgment as to whether it was an upscale cruise line, paid no attention to how many doctors would be onboard, and that if he had known before the cruise that there would only be one doctor onboard, it would have made no difference to him.

Before selecting its medical staff, Celebrity reviews their resumes, obtains clinical references, checks and verifies original diplomas and licenses, verifies that they are current, and completes credentialing paperwork to ensure that the staff is duly licensed. Williams Dep. p. 19.

On September 23, 2010, Plaintiff filed his Second Amended Complaint, raising the following four Counts: Negligence of the Cruise Line Based on Apparent Agency (Count I); Direct Negligence of the Cruise Line: Negligent Hiring and Retention of the Onboard Medical Staff (Count II); Direct Negligence of the Cruise Line: Negligent Misrepresentation (Count III); Breach of Third Party Beneficiary Contract (Count IV).

## DISCUSSION

Celebrity argues that the evidence of record demonstrates that Plaintiff will be unable to prove any of his claims and that Celebrity is therefore entitled to summary judgment.

### I. Standard on Summary Judgment

The purpose of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee's note). Summary judgment is proper only when no genuine dispute as to any material fact exists and the moving party is entitled to a judgment as a matter of law. H&R Block Eastern Enters. Inc. v. Morris, 606 F.3d 1285, 1290 (11th Cir. 2010); Fed.R.Civ.P. 56.[3]

The moving party bears the initial burden of explaining to the Court the basis for the motion and identifying those portions of the record that demonstrate that there is no genuine dispute of material fact. Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1313 (11th Cir. 2007). Thus the movant must either show that the nonmoving party has no evidence to support its case, or present "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991);

---

[3] An issue of fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

5

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004). However, the Court must view all of the evidence in the light most favorable to the nonmoving party, with all reasonable inferences also being drawn in the nonmovant's favor. Info. Sys.& Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002); Siemens Power Transmission & Distrib., Inc. v. Norfolk S. Ry. Co., 420 F.3d 1243, 1248 (11th Cir. 2005). If the movant is able to demonstrate either of the aforementioned requirements, the burden shifts to the nonmoving party to show that a genuine dispute remains for trial. Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010).

A genuine dispute as to material fact exists only when "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Allen, 495 F.3d at 1313; Hickson Corp., 357 F.3d at 1260. Where a reasonable fact finder may "draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion." Doe v. School Bd. of Broward County, Fla., 604 F.3d 1248, 1254 (11th Cir. 2010) (quoting Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)). However, if the facts and inferences overwhelmingly favor one side, such that a reasonable jury could only arrive at one verdict, then summary judgment must be granted as a matter of law. Williams v. Dresser Indus., Inc., 120 F.3d 1163, 1167 (11th Cir. 1997); Bishop v. City of Birmingham Police Dep't, 361 F.3d 607, 609 (11th Cir. 2004). For the non-movant to survive such a grant, there must be more than a mere scintilla of evidence. Williams, 120 F.3d at 1167.

## II. Count I: Negligence of the Cruise Line based on Apparent Agency

Celebrity initially argues that the law established by Barbetta v. S.S. Bermuda Star, 848 F.2d 1364 (5th Cir. 1998) precludes a cause of action against a cruise line for the negligence of its ship's physician under an apparent agency theory. Although there is support for this argument in some decisions out of this District, see, e.g., Balachander v. NCL Ltd., No. 11-21064-JLK (S.D. Fla. Aug. 5, 2011) (Order of Dismissal); Wajnstat v. Oceania Cruises, Inc., No. 09-21850-Civ, 2011 WL

6

465340, at *4-5 (S.D. Fla. Feb. 4, 2011), Chief Judge Moreno has already found in this case that "permitting a claim of vicarious liability based on the theory of apparent agency is not inconsistent with the majority rule announced in *Barbetta*." (D.E. 36 at 5) (citing Doonan v. Carnival Corp., 404 F. Supp. 2d 1367, 1372 (S.D. Fla. 2005); Warren v. Ajax Navigation Corp., No. 91-0230, 1995 WL 688421, at *6 (S.D. Fla. Feb. 3, 1995); see also Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2011 WL 3703329 (S.D. Fla. Aug. 23, 2011). Accordingly, this Court will not address that argument further.

Apparent agency is found where "(1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, (2) that such belief was reasonable, and (3) that the claimant reasonably acted on such belief to his detriment." Doonan, 404 F. Supp. 2d at 1372. Because it is required that the manifestation cause a third party to believe there was an agency relationship, only those manifestations which Plaintiff actually was aware of (either himself or through his wife to the extent that she was his proxy) are relevant to the inquiry.

There is no evidence which suggests that Celebrity made any manifestations that Dr. Dahl was acting as its agent prior to the cruise, such that Plaintiff can claim that he or Mrs. Hill booked the cruise in reliance on any such manifestations. Indeed, the only information which was provided to the Plaintiff and Mrs. Hill, the Ticket Contract, specifically advised that the ship's physician was not Celebrity's agent, but rather was an independent contractor. Plaintiff argues that there is no evidence that either he or his wife read the Ticket Contract. This is not accurate, however, in that the Xpress Pass signed by Mrs. Hill states otherwise. Regardless, a cruise passenger is deemed to be on notice of the provisions of the ticket even if he has not read it, if he or she had a reasonable opportunity to do so. See, e.g., Angel v. Royal Caribbean Cruises, Ltd., No. 02-20409-CIV, 2002 WL 31553524 (S.D. Fla. Oct. 22, 2002).

Moreover, regardless of whether Plaintiff or his wife read the language in the Ticket Contract, Plaintiff was also advised of Dr. Dahl's independent contractor status on the infirmary's

7

Guest Consultation Request form which Mrs. Hill signed on Plaintiff's behalf.[4]

Plaintiff argues that just because Celebrity labels a physician an independent contractor does not necessarily make it so, if there are other contrary manifestations of agency by Celebrity. Although this may be a correct statement, the only other manifestations by Celebrity as to Dr. Dahl which were observed by Plaintiff and/or Mrs. Hill after boarding the ship was the fact that Dr. Dahl wore an officer's uniform and a Celebrity name badge. The Court finds this insufficient to create a reasonable belief on the part of Plaintiff that Dr. Dahl was Celebrity's agent, in light of the specific representations that he was not.

Moreover, even if these manifestations were adequate to create the appearance of agency, Plaintiff must have acted reasonably in relying on those manifestations. Several courts have held that because of the "long standing maritime principle that carriers . . . are not vicariously liable for the acts of their medical staff" any such belief to the contrary is unreasonable as a matter of law. See, e.g., Hajtman v. NCL (Bahamas) Ltd., 526 F. Supp. 2d 1324, 1328-29 (S.D. Fla. 2007).

In Petersen v. Celebrity Cruises, Inc., 753 F. Supp. 2d 1245, 1248 (S. D. Fla. 2010) the Court found that although apparent agency claims would not be prohibited as a matter of law, such claims would be "difficult to establish." Id. at 1248. The plaintiffs in Petersen, which was decided on a motion to dismiss, had only alleged that Celebrity "equipped the ship with an infirmary and provided a medical staff who wore Celebrity uniforms." The Court found these manifestations, when considered with the notice disclaiming an agency relationship in the ticket contract, "insufficient ... to form the basis of a *reasonable* belief of an agency relationship." Id. at 1248 (emphasis in original); but see Lobegeiger, 2011 WL 3703329, at *10-12 (finding that similar allegations of agency were sufficient to survive a motion to dismiss, but noting that argument that reliance was

---

[4] There was no testimony that either Plaintiff or Mrs. Hill did not understand what the term "independent contractor" meant. Plaintiff argues that Mrs. Hill testified that she did not read the Passenger Ticket; however, this does not prove that she or Plaintiff did not understand the meaning of "independent contractor."

8

unreasonable due to disclaimer language in ticket was premature). The Court finds the manifestations in this case also to be insufficient to form a reasonable belief on the part of Plaintiff that Dr. Dahl was Celebrity's agent.

Finally, Plaintiff has not truly demonstrated that he or Mrs. Hill chose or relied on Dr. Dahl because of any alleged representations regarding Dr. Dahl's agency affiliation with Celebrity (as opposed to because he was the only doctor on the ship), in that Mrs. Hill testified that after they found out that Dr. Dahl was the only "Celebrity Cruise Line doctor" on the ship, they attempted to find out from guest services whether there was another doctor on the ship from whom they could get a second opinion. Id. at 109-110.

Because Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to apparent agency, summary judgment should be granted in favor of Defendant as to Count I.

### III. Count II: Negligence of the Cruise Line based on Negligent Hiring/ Retention of Medical Staff

The only issue as to Count II is whether Celebrity provided a competent and qualified physician.

Celebrity has submitted evidence of Dr. Dahl's qualifications and competence in the form of copies of Dr. Dahl's licenses, Curriculum Vitae, letters of recommendation, and excerpts of his personnel file. (Def. Ex. I). Dr. Dahl has a Norwegian medical license, and began practicing medicine on cruise ships in 1971. He is a professor of maritime medicine, and has authored a chapter in a textbook on shipboard medicine. Dahl Dep. pp. 271-272, Def. Ex. I. Celebrity has also included excerpts from the personnel files of the nurses, and cites to Mrs. Hill's testimony that the nurses appeared to be qualified attended well to Plaintiff. C. Hill Dep. pp. 79-80, Def. Ex. J. Finally, Celebrity includes evidence regarding the investigation undertaken by Celebrity prior to hiring its medical staff. Def. Ex. K.

Plaintiff fails to counter any of this evidence, or otherwise support his contention that Celebrity failed to provide a competent or qualified physician or medical staff. Accordingly, summary judgment should be granted in favor of Defendant as to Count II.

## IV. Count III - Negligent Misrepresentation

In Count III, Plaintiff alleges that Celebrity made the following two negligent misrepresentations: (1) that the vessel could "accommodate all guests' medical needs"; and (2) that the vessel carried "two fully qualified doctors and three nurses." Second Amended Compl. ¶¶47, 48.

When sitting in admiralty, a court looks to the common law in considering maritime torts. Warren v. Ajax Navigation Corp. of Monrovia, No. 91-0230, 1995 WL 688421, at *6 (S.D. Fla. Feb. 3, 1995)(citing Su v. M/V S. Aster, 978 F.2d 462, 472 (9th Cir. 1992)); Russel v. AT&T Techs., Inc., 750 F. Supp. 1099, 1103 (M.D. Fla. 1990)(citing Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir. 1980));[5] cf. Stuart Cay Marina v. M/V Special Delivery, 510 F. Supp. 2d 1063, 1069 (S.D. Fla. 2007)(quoting Harrison v. Flora Mercante Grancolombiana, S.A., 577 F.2d 968, 977 (5th Cir. 1978))("For the most part, the general maritime law 'incorporates the general law of torts when not inconsistent with the law of admiralty.'").

Under Florida law, to recover for negligent misrepresentation, a claimant must show: (1) the defendant made a statement concerning a material fact defendant believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because defendant should have known the statement was false; (3) in making the statement, the defendant intended or expected that another would rely on the statement; (4) the claimant justifiably relied on the false statement; and (5) the claimant suffered loss, injury or damage as a result. Jaffe v. Bank of Am., 667 F.Supp.2d 1299, 1319–20 (S.D. Fla. 2009), aff'd, 395 Fed. Appx. 583 (11th Cir. 2010) (quoting Standard Jury

---

[5]All Fifth Circuit decisions handed down prior to the close of business on September 30, 1981, are binding precedent upon the Eleventh Circuit. Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

Instruction-Civil Cases (No. 99-2), 777 So.2d 378, 381 (Fla. 2000)).

A material fact is one of such importance that the claimant would not have entered into the transaction but for the false statement. *Id.* Statements that are mere "puffery" or "sales talk" are not actionable. Carnival Corp. v. Rolls-Royce PLC, No. 08-23318, 2009 WL 3861482, at *3 (S.D. Fla. Nov. 17, 2009); see Speakers of Sport, Inc. v. ProServ, Inc., 178 F.3d 862, 866 (7th Cir. 1999)("'Puffing' signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable...."); cf. Carter Hawley Stores, Inc. v. Conley, 372 So. 2d 965, 968 (Fla. 3d DCA 1979)(quoting the official comment to section 2-313 of the UCC)(noting that whether a statement constitutes puffery is determined under an objective standard assessing whether the statement was part of the basis of the bargain).

The Court finds that the first alleged misrepresentation, that the vessel could "accommodate all guests' medical needs," is mere sales talk. A reasonable consumer would not base his or her decision to purchase a cruise upon a general, non-specific, statement broadly asserting a cruise line's ability to accommodate all of a passenger's medical needs. See Gentry v. Harborage Cottages-Stuart, LLLP, 602 F. Supp. 2d 1239, 1252 (S.D. Fla. 2009), aff'd in part, vacated in part on other grounds, 2011 WL 3904087 (11th Cir. Sept. 7, 2011) (stating that exaggerated statements concerning the quality of an offering by a seller constitute non-actionable puffery). Rather, the statement amounts to nothing more than an enthusiastic subjective claim, the type that ordinary consumers are accustomed to in the commercial marketplace. See, e.g., Hoffman v. A.B. Chance Co., 339 F. Supp. 1385, 1388 (M.D. Pa. 1972)("The general representation that a product 'offer[s] unprecedented safety' is a statement of opinion and is in the nature of [a] seller's 'puffing.'"); see also Evanston Hosp. v. Crane, 627 N.E.2d 29, 35–36 (Ill. App. Ct. 1993)(construing a hospital's statement that it was committed to providing "high quality medical care" as mere puffery). Consequently, the

representation that the vessel can "accommodate all medical needs" is not actionable.[6]

As to the second alleged misrepresentation, i.e., that the vessel carried "two fully qualified doctors and three nurses," Plaintiff has failed to demonstrate a genuine dispute of fact on the issue of reliance. Although Plaintiff alleged in the Amended Complaint that this representation was made "among other places, in the frequently asked questions on the cruise line's website," (Am. Compl. ¶47), Plaintiff admits that he never heard or saw this alleged "misrepresentation." To the extent that Plaintiff maintains that Mrs. Hill was his "agent" for purposes of booking the cruise, Plaintiff has not cited to any testimony by Mrs. Hill in which she states that she read or heard this alleged misrepresentation prior to booking the cruise.[7]

Moreover, "[r]eliance on [negligent misrepresentations are] unreasonable *as a matter of law* where the alleged misrepresentations contradict the express terms of [a subsequent] written agreement." Jaffe, 677 F. Supp. 2d at 1320 (quoting Garcia v. Santa Maria Resort, Inc., 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007))(emphasis added); cf. Johnson Enters. of Jacksonville v. FPL Grp., 162 F.3d 1290, 1309 (11th Cir. 1998)(holding that, under Florida law, evidence of prior agreements is inadmissible to modify or contradict the unambiguous language of a valid contract).

In this case, the Ticket Contract contains not only a merger clause disclaiming representations

---

[6] Even if this statement were actionable, the Court finds that reliance on any such representation was unreasonable as a matter of law, for the reasons discussed *infra*.

[7] Although Plaintiff refers the Court to Mrs. Hill's deposition at page 189, on that page, Mrs. Hill merely testifies that she would not have booked the cruise had she known that there would only be one physician onboard. See C. Hill Dep. p. 189. She does not testify that she "read the false materials that there would be two physicians." Resp. p. 19. Rather, Mrs. Hill testified that she learned that Dr. Dahl was the only ship physician in a conversation with him onboard, in which Dr. Dahl also told Mrs. Hill that Celebrity was "doing, I believe he used the word [an]experiment, for having one doctor onboard a cruise line of that size, to see if they could manage with one doctor, rather than having to be committed to having two doctors..." C. Hill Dep. p. 259. Although Mrs. Hill also testified that when she boarded the cruise, she "thought there was going to be at least two doctors onboard" (id.), she fails to state what gave her that impression.

12

made prior to the ticket contract, but also provisions stating that the availability of medical care may be limited or delayed. In light of the Ticket Contract's express contractual provisions, any reliance on representations concerning the availability of medical care made prior to the signing of the ticket contract was not reasonable.

Although Plaintiff and Mrs. Hill testified to not reading the Ticket Contract, their failure to exercise reasonable diligence, where they were both in a position to do so, does not relieve Plaintiff from being bound by the terms of the contract.[8] See Benoay v. E.F. Hutton & Co., 699 F. Supp. 1523, 1529 (S.D. Fla. 1988)("A party who signs an instrument is presumed to know its contents . . . . [The party] cannot avoid [their] obligations thereunder by alleging that [they] did not read the contract . . . ."); Univ. of Miami v. Intuitive Surgical, Inc., 166 Fed. Appx. 450, 453 (11th Cir. 2006)(citing Jabour v. Calleja, 731 So. 2d 792, 795 (Fla. 3d DCA 1999))(under Florida law, failure to read a contract cannot excuse a party's duty to both read the contract and know of its contents). Consequently, any reliance on representations regarding the availability of medical care made prior to Plaintiff's assent to the terms of the Ticket Contract would be unjustified. See Warren, 1995 WL 688421, at *2 (holding that representation regarding medical care contained in a marketing brochure may not be incorporated into a ticket contract where the contract unambiguously covers the subject

---

[8] As the Jaffe Court stated:
> every person must use reasonable diligence for his own protection. Under any standard of conduct, and in the absence of accompanying actual deception, artifice, or misconduct, it is well agreed that whether the means of knowledge are at hand and are equally available to both parties, and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunities, he will not be heard to say he was deceived by the other's misrepresentations.

Jaffe, 667 F. Supp. 2d at 1320 (quoting Potakar v. Hurtak, 82 So. 2d 502, 504 (Fla. 1955)).

13

matter of medical care).[9]

Because Plaintiff cannot demonstrate reasonable reliance on any alleged misrepresentations of material fact, summary judgment as to Count III should be granted.

## V. Count IV - Breach of Third Party Contract

In Count IV, Plaintiff brings a claim of breach of contract, as an alleged third party beneficiary of the Independent Contractor Senior Physician Agreement ("Agreement") between Celebrity and Dr. Dahl.

When interpreting a maritime contract, courts apply the law of the state where the contract was made. Rose v. M/V "Gulf Stream Falcon", 186 F.3d 1345, 1350 (11th Cir. 1999)(citing S.C. Loveland, Inc. v. E. W. Towing, Inc., 608 F.2d 160, 164 (5th Cir. 1979))("When interpreting a maritime contract, we apply . . . the conflict of law principle *lex loci contractus*–the law of the place where the contract is made."); Great Lakes Reinsurance (UK), PLC v. Rosin, 757 F.Supp.2d 1244, 1250 (S.D. Fla. 2010). The contract in this case was made in Florida; accordingly, Florida law applies.

Under Florida law, a cause of action for breach of a third party beneficiary contract consists of the following elements: (1) existence of a contract; (2) a clear intent, either expressed by the parties, or expressly provided within the contract, that the contract primarily and directly benefit the

---

[9] Celebrity additionally contends that the representation was true at the time Plaintiff purchased his tickets in December, 2008. However, prior to the transaction, Celebrity admittedly conducted internal discussions regarding converting certain vessels to single-physician vessels (Diskin Dep., p. 17, 1. 1-8), and it is unclear exactly when the vessel would transition to a single-physician vessel. See Indulgence Yacht Charters, Ltd. v. Ardell, Inc., No. 08-60739, 2008 WL 4346749, at *6 (S.D. Fla. Sept. 16, 2008)(holding that a dispute regarding the defendant's knowledge prior to the date of purchase precluded summary judgment on a negligent misrepresentation claim). While there is a genuine dispute of fact regarding the second element of a negligent misrepresentation claim–whether the defendant should have known of the falsity of the representation–the point is moot in light of Plaintiff's inability to satisfy the element of justifiable reliance.

third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach. Intercoastal Realty, Inc. v. Tracy, 706 F. Supp. 2d 1325, 1329 (S.D. Fla. 2010)(quoting Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994)).

In Florida, a non-party to a contract may sue for breach of that contract if the non-party is an intended, and not incidental, beneficiary of that contract. Tracy, 706 F. Supp. 2d at 1329 (citing Caretta, 647, So.2d at 1030–31)("Under Florida law, a person who is not party to a contract may not sue for breach of that contract where the person receives only an incidental or consequential benefit from the contract."); CC-Aventura, Inc. v. Weitz Co., LLC, No. 06-21598-CIV, 2007 WL 117935, at *4 (S.D. Fla. Jan. 10, 2007)(quoting Biscayne Inv. Grp. v. Guar. Mgmt. Servs., 903 So. 2d 251, 254 (Fla. 3d DCA 2005))("Under Florida law, third party beneficiary rights exist only if the contract itself clearly expresses an intent to *primarily* and directly benefit the third party.")(emphasis added). "The intention of the contracting parties, gleaned from the contract itself, is determinative. It is not enough that the . . . services ultimately rendered accrue to the third party." Networkip, LLC v. Spread Enters., Inc., 922 So. 2d 355, 358 (Fla. 3d DCA 2006)(quoting City of Tampa v. Thornton-Tomasetti, P.C., 646 So. 2d 279, 282–83 (Fla. 2d DCA 1994)).

The Agreement between the cruise line and Dr. Dahl incidently benefits the cruise line passengers by assuring their access to medical service while aboard the cruise line's vessel; however, the agreement *primarily* benefits the cruise line and Dr. Dahl, not Plaintiff.[10] In executing the Agreement, Dr. Dahl received the right to compensation for his services and the cruise line, *inter*

---

[10] In the alternative, Plaintiff argues that cruise line passengers represent a class of intended beneficiaries. Under either theory, the Plaintiff is not an *intended* beneficiary of the independent contractor agreement between the cruise line and Dr. Dahl. See Green Acre Props., Inc. v. Rao, 933 So. 2d 19, 23 (Fla. 2d DCA 2006)(explaining that third party beneficiaries may be comprised of a class of unnamed beneficiaries, however the contract must be *primarily intended* to benefit the class).

*alia*, satisfied its legal obligations of providing a certified physician aboard its vessel. The Agreement creates no express rights for cruise line passengers.[11] Further, in construing the Agreement, it is clear that the it addresses, *inter alia*, the scope of Dr. Dahl's duties, and other legal rights and remedies pertaining to the independent contractor relationship between the cruise line and Dr. Dahl.

Finally, Plaintiff relies on Belik v. Carlson Travel Grp., Inc. for the proposition that properly pleading intent satisfies their burden on summary judgment. Resp. p. 21 (citing Order on Motion to Dismiss at Pgs. 14–16; Belik v. Carlson Travel Grp., Inc., No. 11-21136, 2011 WL 2221224 (S.D. Fla. June 6, 2011)("[A] [p]laintiff may generally allege intent, but the intent alleged must then be specific.")). Plaintiff's reliance is misplaced. The referenced order was regarding a motion to dismiss, not a motion for summary judgment. See Barnett v. Carnival Corp., No. 06-22521-CIV, 2007 WL 1746900, at *4-5 (S.D. Fla. June 15, 2007)(distinguishing between motions to dismiss and summary judgment motions with respect to the intent element of third party beneficiary claims). Although relying on the allegations within the complaint may suffice to overcome a motion to dismiss, a party may not merely rest upon the allegations within the complaint at the summary judgment phase. Fed.R.Civ.P. 56(e)(2)( "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading ...."). Consequently, because of Plaintiff's failure to provide evidence of material facts beyond the allegations within the complaint, Plaintiff has failed to establish the second element of a third party beneficiary claim–a clear intent to primarily benefit the third party.

Accordingly, because Plaintiff has failed to prove that the agreement was intended primarily for his benefit, summary judgment as to Count III should be granted.

---

[11] Although the Agreement states that Dr. Dahl is to deliver "medical care to guests and crew," this language does not confer an intended, legally enforceable right upon the plaintiff, or any other passenger. Independent Contractor Agreement, Pg. 3.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that Celebrity's Motion for Summary Final Judgment be **GRANTED**.

The parties have fourteen (14) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this 14th day of September, 2011, at Miami, Florida.

STEPHEN T. BROWN
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: Honorable Federico A. Moreno
    Counsel of record